## FULLER *v.* ROUNCEVILLE.

Where an action of trespass *de bonis* was brought by F. against R., who had taken personal property mortgaged to S., by direction of the mortgagee—*held*, that the mortgagee was a competent witness for R., and was not disqualified by reason of interest.

Where an entry upon a mortgage of personal property was as follows : "Rec'd June 4, 1850, 6 o'clock forenoon, and recorded page 38, vol. 2, and examined by me, Wm. B. Crane, Town Clerk," and it appeared that the mortgager and mortgagee both resided, at that time, in the town of D.—*held*, that the entry was sufficient, *prima facie*, to show the mortgage duly recorded in the town of D.

Where the defence to an action of trespass *de bonis*, was a mortgage of the property to a third person, by whose directions the defendant took the same, and the note secured by the mortgage was not produced on the trial with the mortgage, nor called for by the plaintiff, but the mortgagee, on cross-examination by the plaintiff, stated that he still held the note, and the jury, under the instructions of the court, found that the note was unpaid, and the mortgage uncancelled—*held*, that, under these circumstances, it was no objection to the introduction of the mortgage, that the note was not produced.

TRESPASS, for taking and carrying away one single sleigh, on the 13th day of December, 1851. Plea, general issue.

It appeared that the sleigh was formerly the property of one Ela J. Rounceville, and that it remained in his possession until sometime in January, 1851, when it came into the possession of the plaintiff, where it remained till the defendant took it away. The defendant is a son of said Ela J. Rounceville. It was admitted that at the time of the commencement of this suit, the plaintiff held a note, dated April 2, 1850, for the sum of $22,28, signed by said Ela J. Rounceville, and payable to the plaintiff, or order, on demand, with interest ; which note the plaintiff produced upon a former trial, but has since lost it. The plaintiff then proved his possession of this sleigh in the summer of 1851, and the latter part of the winter before, and up to the time the defendant took it, and that the defendant took and carried away the sleigh on said 13th December, 1851, and that at the time the defendant took the sleigh, plaintiff forbid him, and said, " The sleigh is mine ; I bought it and paid

for it. I bought it of your (defendant's) father." And rested his case.

The defendant introduced Mrs. Orrel Rounceville, widow of said Ela J. Rounceville, who testified that she and her husband moved from Unity to Dalton, N. H., about nine years ago, and brought this sleigh with them, and that her husband had never owned any other sleigh but the one now in controversy, during all the time he lived in Dalton; that her husband had this sleigh in his possession in June, 1850, when he gave to one James B. Sumner a mortgage of certain personal property; that she did not know whether this sleigh was included in the mortgage or not; that her husband had no other sleigh but this at the time; and that soon after her husband gave Sumner this mortgage, they went to Unity, leaving the sleigh at their own house; that they returned on a visit to Dalton the first of January, 1851, and that her husband then had this sleigh, and that said plaintiff and his son borrowed this sleigh of her husband to use several times, while they remained at Dalton, and returned it to her husband; that her husband left Dalton for Unity the latter part of January, 1851, and never returned to Dalton, but died at Unity in September, 1852.

The defendant then called James B. Sumner, who produced a chattel mortgage from said Ela J. Rounceville to himself, dated June 3, 1850, which was duly executed, subscribed and sworn to, according to law. The note described in the condition of the mortgage, and referred to in the oath, was for some $250, from said Ela J. to said Sumner, and dated sometime prior to the date of the mortgage. Both parties were described in the mortgage as living in Dalton, in said county of Coos. And among other property conveyed to Sumner in the mortgage, was " one single sleigh." Upon the back of the mortgage was the following memorandum: " Rec'd June 4, 1850, 6 o'clock forenoon, and recorded page 38, vol. 2, and examined by me. Wm. B. Crane, Town Clerk." Defendant then proposed to examine

said Sumner as a witness, stating upon what points and what facts he expected to prove by him, which were in substance as stated afterwards by said Sumner in his direct examination. The plaintiff objected to the witness, on the ground of interest. But the court overruled the objection, and received the testimony. To which ruling the plaintiff excepted.

Sumner stated that he was acquainted with said Ela J. Rounceville; that the mortgage was given by him to witness; that in January, 1851, or thereabouts, said Ela J. Rounceville and the defendant called upon him with a view to make some settlement of their affairs, and that an arrangement was made between said Ela J. and himself, that he should take the property specified in the mortgage, at such prices as they should agree upon, and that it should be applied upon the mortgage debt; that they read over the several articles in the mortgage, and agreed upon the value of each, till they came to the sleigh, when witness inquired where the sleigh then was. Whereupon Sumner directed the defendant to go to the plaintiff's and get the sleigh for him.

Witness further testified, on cross-examination, that he did not know the sleigh at the time it was mortgaged to him, neither did he know whether the sleigh mortgaged to him was the one in controversy in this suit.

That they had this mortgage before them at the time they made this arrangement, in January, 1851; also that he still held the note described in the condition of this mortgage, but that he did not take it with him to court, and further, that he never gave said mortgager any liberty to sell or in any way to dispose of any of the mortgaged property. The mortgage note was not produced.

The plaintiff objected to the admission of the mortgage aforesaid, for the following reasons:

I. That the description of the property therein was not sufficiently specific to indicate the sleigh in question.

II. That it did not appear from said mortgage, or any other evidence in the case, that the same had been recorded in the town of Dalton, where the mortgager resided.

III. That the note mentioned in the condition of said mortgage is not produced.

But the court overruled the objections, and admitted the mortgage in evidence. To which ruling the plaintiff excepted.

The court instructed the jury that if, from all the evidence before them, they believed that the sleigh in controversy in this suit was the same one mortgaged to Sumner by Ela J. Rounceville, June 3, 1850, and that the plaintiff had acquired no title to said sleigh by purchase, pledge, or otherwise, neither had any possession of it, till after Sumner's mortgage, and that the mortgage to Sumner had not been cancelled or discharged by a full payment or satisfaction of the note described in the condition thereof, or in any other way, and that the said defendant, when he took the sleigh, did so under the authority and by direction of said Sumner, and for him, then their verdict would be for the defendant, othwise for the plaintiff.

The jury returned a verdict for the defendant, which the plaintiff moves to set aside, upon the ground of his exceptions aforesaid to the rulings of the court. And it was ordered that the questions of law arising upon the foregoing motion be transferred to the superior court.

*Burns & Fletcher*, for the plaintiff.

*H. & G. A. Bingham*, with whom was *Cooper*, for the defendant.

The first point in this case is whether James B. Sumner was interested. To exclude a witness on the ground of interest, he must have an immediate, direct, legal interest in the event of the suit, such an one as will either make him a gainer or loser—not a doubtful, contingent, fancied or

honorary one, or an interest in the question. 2 Starkie Ev. 747; *Howe* v. *Howe*, 10 N. H. Rep. 88; 1 Greenl. Ev. §§ 387, 388, 389.

Had Sumner such an interest? The case shows that Sumner had the oldest title and the best. Fuller's claim was only bare possession. Hence, if, by possibility, he has an interest in the suit, it is balanced, as he could recover the sleigh as well of Fuller, if successful, as of Rounceville, should he succeed. *White* v. *Phelps*, 12 N. H. Rep. 382; *Abbott* v. *Copp*, 17 Vt. Rep. 593; *Page* v. *Weeks*, 13 Mass. Rep. 200.

Sumner neither gains or loses any thing, whatever may be the result of this suit. But he has not any disqualifying interest. For if Rounceville took the sleigh under Sumner's direction, and is a trespasser, Sumner is equally a trespasser, and as a co-trespasser, is a competent witness for a defendant. There is no contribution among wrong doers. *Brown* v. *Marsh*, 8 Vt. Rep. 310; *Watson* v. *Shelley, Ashurst Justice*, 1 Term Rep. 301; 2 Starkie Ev. 764; *West* v. *Ballou*, 4 Vt. Rep. 558. There is no pretence in the case that Sumner is liable from any indemnity given.

II. The objections to the admission of the mortgage.

The first is, was the sleigh sufficiently described? It is sufficient to pass the property. It is the same that is usually given in mortgaging and conveying like property, and is the same description that the plaintiff has given in his declaration. It was competent to be submitted to the jury, in connection with the other evidence, as was done in the charge of the court.

Second, as to the recording of the mortgage. All the statute requires is that the certificate should show the time when it was received and recorded. Rev. Stat, ch. 132, § 12. All this appears in the certificate. Also the volume and page where it was recorded. Now this certificate, signed by the town clerk, was competent to be submitted to the jury, in connection with the other facts bearing upon this

point—such as that both parties lived in Dalton, &c.; and this is all that was done in this case.

The third objection, like the other two, is to the mortgage being submitted to the jury at all; not as to the effect of it as a piece of evidence, when once submitted. We think the mortgage, without the note, was entitled to go to the jury for what it was worth. No exception is taken to the ruling of the court, when introduced. But be this question as it may, it does not arise in this case; it is true the case shows the note not produced, but it equally shows the omission supplied in the plaintiff's cross-examination of Sumner. The plaintiff then proves all the production of the note could prove, and without objection. And he cannot now take the exception that it is not proved. *Pickard* v. *Bailey*, 6 Foster's Rep. 152, 172.

This evidence, in connection with the other evidence bearing upon the existence of the note. The validity or discharge of the mortgage all having been submitted to the jury, under proper instructions from the court. And the jury have established the fact that the mortgage was a valid mortgage, at the time of the taking, and that the defendant took the sleigh under the directions of the mortgager. And all upon competent testimony.

Eastman, J. When this case was before the court on a former occasion, it was held that the defendant might show the mortgage from Ela J. Rounceville to Sumner, as an answer to the action against himself. *Fuller* v. *Rounceville*, 9 Foster's Rep. 554.

As the case is now presented, it appears to us that there is substantially but one question for the court to determine; and that is, whether Sumner was a competent witness. All the other material matters in controversy were settled by the jury under the instructions of the court. For instance, they settled that the sleigh was the same one mortgaged to Sumner; that the plaintiff had acquired no title to it by pur-

chase, pledge, or otherwise, nor had he had any possession of it till after the mortgage to Sumner; that the mortgage had not been cancelled or discharged by the payment or satisfaction of the note described in the condition, nor in any other way; and that the defendant took the sleigh under the authority and direction of Sumner.

Sumner was objected to as a witness on the ground of interest. Was this objection well taken? The general rule is that interest, to disqualify a witness, must be legal, certain and immediate; either in the event of the cause itself, or in the record as an instrument of evidence in support of the claims of the witness in a subsequent action. *Page* v. *Weeks*, 13 Mass. Rep. 199; 1 Stark. Ev. 102; *Bent* v. *Baker*, 3 Term Rep. 27; *Doe* v. *Tyler*, 6 Bing. 390; *Smith* v. *Prager*, 7 Term Rep. 62; 1 Greenl. on Ev. § 386. The liability of the witness to a like action, or his standing in the same predicament with the party, if the verdict cannot be given in evidence for or against him, is an interest in the question merely, and does not exclude him. *Evans* v. *Eaton*, 7 Wheat. 356, 424; *Stewart* v. *Kip*, 5 Johns. 256; 1 Greenl. on Ev. § 389. And one trespasser is a witness for his co-trespasser. *Walton* v. *Shelley*, 1 Term Rep. 301; *Duncan* v. *Meikleham*, 3 C. & P. 172; *Curtis* v. *Graham*, 12 Mart. 289; 1 Greenl. on Ev. § 389.

This defendant was sued in trespass for taking and carrying away a certain sleigh alleged to be the property of the plaintiff. To this he pleaded the general issue, that he was not guilty; and a verdict in his favor would establish that fact; that is, that he did not wrongfully take and carry away the sleigh of the plaintiff. If he should prove that he did not take the sleigh, or that it was not the property of the plaintiff, he would in either event succeed. But such a verdict would not establish the rights of third persons, for there is nothing in the pleadings or the issue showing that their rights are in any way involved. A verdict in favor of the defendant could not prevent the plaintiff from bringing a

similar action against Sumner, and if he could show that the mortgage of Sumner was for any reason invalid, it would be no legal answer for Sumner to say that the mortgage had once been found good in an action between the plaintiff and Rounceville. Sumner's right to the property was not established by this verdict, and it could not be used in a future action either for or against him. Upon that ground, therefore, he had no legal interest in the result of the present suit. He might have feelings as to the result, and an interest in the *question* of the ownership of the sleigh, but these were matters that went only to his credibility and not to his competency. A judgment in favor of Rounceville could not be used by Sumner in any future controversy of his in regard to the sleigh.

Again, Sumner had no immediate legal interest in the result of the suit. He was not liable either for costs or damages, nor had he entered into any agreement to indemnify Rounceville for taking the sleigh. The action was not brought for the sleigh, but for damages for the alleged wrongful taking. Sumner's right to the sleigh was not established by this suit, and he could legally hold it none the better for a verdict and judgment in favor of Rounceville. In a legal point of view he could neither gain nor lose by the result. He was, therefore, a competent witness, and the ruling of the court admitting him was correct.

No exception was taken to the details of Sumner's testimony, and no question was raised thereon; but the admission of the mortgage was objected to for several reasons. Judging from the manner in which these objections are stated in the case, we should infer that they were not seasonably taken; but they may have been.

The first objection was, that the description of the property in the mortgage was not sufficiently specific to indicate the sleigh in question. We have not the mortgage before us, and cannot determine from inspection what weight ought to be given to this objection on the ground of defect in the

description merely. But this would seem not to be necessary, for the jury have decided that the sleigh in controversy was the one included in the mortgage. That decision must remove this objection to the mortgage.

The second objection was, that it did not appear from the mortgage, or any other evidence in the case, that the same had been recorded in the town of Dalton, where the mortgager resided. The evidence showed both the mortgager and mortgagee to have been residents of Dalton at the time the mortgage was executed. Upon the back of the mortgage was the following memorandum: " Rec'd June 4, 1850, 6 o'clock, forenoon, and recorded page 38, vol. 2, and examined by me. Wm. B. Crane, town clerk." This is probably the usual form adopted by town clerks, when making a certificate of record upon the original mortgage. It is also believed to be the course taken by many recorders of deeds. Both are certifying officers to some extent, and when called upon for copies from their records, either do or should state the town or county records from which the copies are taken, and also their official character. Upon the originals, however, we think that a certificate like the present one is sufficient, *prima facie*, of the record having been duly made in the right office. In this case the mortgage itself was produced, and its execution either proved or admitted. Both parties were residents of Dalton, and the property was there situated. On the back of the mortgage is what purports to be a certificate of a town clerk that the mortgage has been recorded. Where? Evidently in the town where the parties reside. This must be the construction until some evidence is introduced tending to show the contrary. *Prima facie*, this is what the certificate imports; that it is properly recorded in the town where the law requires it to be; and a party questioning that fact must at least throw some suspicion upon it before a court will declare it insufficient.

The last exception was, that the note mentioned in the

condition of the mortgage was not produced. But this exception is answered by the fact, that the production of the note was not called for by the plaintiff, either by having given notice to produce it upon the trial or by a request for it when the mortgage was introduced; and on cross-examination of the witness by the plaintiff its existence was shown, and to be in the hands of the mortgagee. This cross-examination, in the absence of any specific demand for the note, was competent to show the note secured by the mortgage to be unpaid; and the jury have found that fact, and that the mortgage had never been cancelled or discharged.

Entertaining these views in regard to the case, our opinion is that there should be,

*Judgment on the verdict.*