## EHRLICH *v.* BOARD OF EDUCATION OF BALTIMORE COUNTY, ET AL.

[No. 324, September Term, 1969.]

*Decided April 6, 1970.*

*Motion for rehearing filed April 27, 1970; denied May 4, 1970.*

The cause was argued before HAMMOND, C. J., and

544

BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John C. Evelius,* with whom were *John H. Doub, III,* and *Gallagher, Evelius & Finnerty* on the brief, for appellant.

*B. Marvin Potler, Assistant County Solicitor,* with whom were *R. Bruce Alderman, County Solicitor* and *Harry S. Shapiro, Assistant County Solicitor,* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This case is before us on appeal from a judgment of the Circuit Court for Baltimore County in favor of the Board of Education of Baltimore County and the Board of Trustees of the Essex Community College, plaintiffs-appellees. From 1957-1964, the defendant-appellant, Mr. Ehrlich, was employed as a professor at the Essex Community College. In an effort to better prepare himself for the expanded needs of the college, he applied for a sabbatical leave for the academic year 1964-1965. He was granted the sabbatical and a letter outlining the conditions of the grant was prepared by Dr. Moses Koch, president of the college. Among the more important terms of the grant were the following: "Any person to whom sabbatical leave is granted shall be required * * * to agree to return to the service of the Essex Community College for at least one year following the expiration of his leave. Should the teacher not return, he will be required to refund the money granted for sabbatical leave." In a letter dated April 1, 1964, Mr. Ehrlich stated he thought the terms were fair and agreed to accept them.

While on leave, Dr. Koch appointed a formal chairman of the Social Science Department. This upset the appellant because it was his understanding that he was to return to Essex as acting head of the Social Science Department. He was also upset because the expertise of the

new chairman was in political science and this was the area in which the appellant expected to do most of his teaching upon return to the college. While on sabbatical, he took graduate courses in political science at the Johns Hopkins University. When the sabbatical was over, he took a further leave of absence without pay for the following academic year, 1965-66. In March, 1966, he informed Dr. Koch that he would not be returning to Essex. Dr. Koch responded that he could still return to the same position which he had when he left, which Dr. Koch held to be Associate Professor of Social Science.

When Mr. Ehrlich refused to accept, the Board of Education of Baltimore County on July 19, 1966, filed suit to collect $4750.00, the sum which he had been paid during his sabbatical. Accompanying the declaration was a motion for summary judgment. The appellant responded by filing a counterclaim against the Board of Education and by asserting the technical deficiency of plaintiff's affidavit which was filed along with the motion for summary judgment.

The case lay dormant until March 3, 1969, when the Board of Education filed an amended affidavit. To this maneuver the defendant countered with a motion *ne recipiatur* or in the alternative a motion to strike. On June 19, 1969, the appellant moved for summary judgment alleging that any contract to which he may have been obligated was not with the Board of Education but was with the Board of Trustees of the Essex Community College. Thus on July 25, 1969, the Board of Education moved to add as party plaintiff the Board of Trustees.

Judge Turnbull allowed the party plaintiff to be added and granted their motion for summary judgment as he found that the defendant had wilfully violated his contract by refusing to return to Essex.

The appellant raises the following issues on appeal:

(1) Should the trial court have accepted the Board of Education's amended affidavit and denied appellant's motion *ne recipiatur* or in the alternative motion to strike.

(2) Should the trial court have granted the Board's Motion to Add Party Plaintiff.

(3) Did the trial court err in granting plaintiffs a summary judgment because there was a dispute as to material facts.

(4) Did the trial court err in denying appellant's motion for summary judgment without a hearing and in denying his motion for a new trial.

Appellant's first contention is that appellees' original affidavit which accompanied the motion for summary judgment was ineffective. This is correct as the original affidavit was not made upon the personal knowledge of the affiant and failed to assert his competency as to the matters alluded to. Maryland Rule 610 b. The issue then is whether the amended affidavit which was filed three years later can be effective. Appellant urges that the affidavit to be effective had to accompany the motion for summary judgment since it was filed with the appellees' declaration. Maryland Rule 610 a (3). However this is a too technical construction of the Maryland Rules. The Court has said with respect to the purpose of the summary judgment rules: "In general the effect of the changes in Maryland was not to restrict or narrow, but to broaden the federal rule. Moreover, the Summary Judgment Rules, unlike the former Speedy Judgment Acts, do not preclude amendments in such proceedings." *Fletcher v. Flournoy,* 198 Md. 53, 57, 81 A. 2d 232 (1951). See also *Frush v. Brooks,* 204 Md. 315, 104 A. 2d 624 (1954), wherein Judge Hammond, now Chief Judge, speaking for the Court stated: "The Court had jurisdiction of the parties and the subject matter and if it had granted a summary judgment of its own motion, this alone would not affect an otherwise valid judgment. *Hamburger v. Standard Lime and Stone Co.,* 198 Md. 336." *Id.* at 322.

There is no contention that the allowance of such amended affidavit prejudiced the appellant. The techni-

cality of the objection can best be understood when one realizes that a summary judgment motion can be filed at any time without an affidavit once a responsive pleading has been lodged. Thus the effect of filing the amended affidavit in 1969 was the equivalent of filing a new motion for summary judgment. We think the trial court properly denied the motion *ne recipiatur* and the motion to strike, especially in light of the general purposes of the summary judgment procedures.

Appellant's second contention is that the trial court erroneously granted the motion to add party plaintiff. He argues that since the contract which he is alleged to have violated was with the Board of Trustees, the Board of Education which was the original plaintiff, had no cause of action against him. The primary objection from appellant's vantage of allowing the new party is that limitations would have run had the Board of Trustees attempted to file a new suit against him at this time. It is not so much the addition of the Board of Trustees as party plaintiff but the refusal of the trial court to allow the plea of limitations against this party to which appellant objects. It was the position of the trial court that the two plaintiffs were essentially identical in that the members of the Board of Education are also the duly constituted members of the Board of Trustees. In this connection it should be noted that at the time of original employment the appellant was employed by the Board of Education. However, at the time of the negotiations concerning his sabbatical his employer was technically the Board of Trustees, although as we have previously stated, the same individuals served on both boards. The reason for the change from the Board of Education to the Board of Trustees, insofar as the administration of the college was concerned, came about by virtue of Chapter 134 of the Acts of 1961, which provided that for the "purpose of administration over these colleges the Board of Education shall constitute a board of trustees and governmental corporation vested with the following powers * * *"

In the instant case we do not believe that there was a change in the real party in interest. We think the addition of the "Board of Trustees" as a party was no more a change of substance than was the addition of the County as a party defendant in *Glens Falls v. Baltimore County, et al.*, 230 Md. 524, 187 A. 2d 875 (1962). In that case the plaintiff, a supplier of materials to a contractor, sued Glens Falls as the indemnitor on the performance bond when the contractor failed to pay. The contractor had a contract with Baltimore County for road construction and when the supplier filed suit, he sued Glens Falls and failed to join the County, with whom the contractor actually had the contract. In upholding the lower court's action permitting an amendment to the declaration by interlineation whereby the County was joined as a party defendant, after the conclusion of the plaintiff's case, this Court stated:

> "We find no error. The amendment was one of form and not of substance, permissible under Rule 320. It merely brought in the county as a nominal party, for the use and benefit of Dyer, and did not change the real parties in interest. Cf. *LeStrange v. State, Use of Roche*, 58 Md. 26, 39 and *State v. Gaver*, 115 Md. 250, 256. See also *B. & O. R. R. v. State, Use of Allison*, 62 Md. 479, 481 and *Mayor and C. C. of Balto. v. Yost*, 121 Md. 366, 375. * * *." 230 Md. 528.[1]

Also, in *Western Union Tel. Co. v. Nelson*, 82 Md. 293, 33 A. 763 (1899), wherein the plaintiff sued the wrong corporate defendant (a New York corporation) in a tort case and later sought to amend by adding the correct corporate party (a Maryland corporation), whereupon the new defendant interposed the plea of limitations, this Court stated:

---

1. See also Maryland Rule 313 c 2 which provides:
   "2. Several Plaintiffs
   Where several persons are uncertain as to which of them is entitled to a claim or to relief, any or all of them may join as plaintiffs in the alternative * * *."

"* * * The 36th sec. of Article 75 of the Code provides that no action shall abate by reason of the misnomer of a defendant, but the Court, at its discretion on suggestion, &c., or other proof to the satisfaction of the Court, that 'by mistake the plaintiff has sued in a wrong name or that the party summoned in virtue of said writ or action is in fact the party intended to be sued by such writ or in such action may at any time before judgment, direct the writ or any of the proceedings to be amended by inserting therein the true name' of any defendant. In this case, the summons was served on a person who was an officer of both companies, and upon him as manager of the defendant corporation. He was in fact the manager of both. The service was efficient to bring into Court either one of the companies. Under the circumstances it might well happen that an attorney who was closely connected with both, and knew the very slight differences in the two corporate names, might fall into error as to which company was intended to be sued, but if he did, his mistake could not operate to deprive the plaintiff of his right, when he discovered there were two companies with names so nearly alike, of designating which of the two he was suing." 82 Md. 306, 307.

In the instant case we find no prejudice occasioned to the appellant by allowing the joinder of the Board of Trustees as a party plaintiff. This is supported by the fact that the appellant in his counterclaim sued the Board of Education, thereby indicating that in his own mind he made no distinction between the Board of Trustees and the Board of Education, insofar as liability for a breach of this contract was concerned. For the appellant to have been consistent with the position he later took in 1969, when he objected to the motion to add the new party, he should have previously, when filing his counter-

claim three years before, filed it against the Board of Trustees of Essex Community College instead of the Board of Education. We think there is no merit to this second contention of the appellant.

Finally the appellant resisted the Board's motion for summary judgment on the premise that there exists a genuine dispute as to material facts, namely, the status and professional role which the appellant was to assume upon his return from his sabbatical. The lower court, however, looking at the pleadings, affidavits and exhibits filed in support of the motion, found that a binding contract had been entered between the parties, whereby the appellant, in return for having been given a sabbatical, would return to teach at the college as an Associate Professor of Social Sciences. We would further add that we think such a status is the only one to which he was entitled as a matter of right under the contract between the parties.

It is our opinion that the implications and inferences which the appellant would urge upon us regarding his understanding with the president of the college as to what his academic status would be upon his return, are not sufficiently supported by facts of legal significance in the affidavit accompanying his answer as to compel the conclusion that there is a dispute as to material facts. *Frush v. Brooks, supra,* at 320, 321.

The appellant repeatedly refers to the fact that it was his understanding, and the understanding that he had with Dr. Koch, that he was to return to the college as Acting Chairman of the Department of Political Science. The very designation of a position as "acting" carries with it the connotation that it is of a temporary nature. Webster's *Third New International Dictionary* — unabridged 1966, gives the following definition of "acting" as: "holding a temporary rank or position; performing services (ex: acting president serving in an acting capacity)." We fail to see how the appellant can, in good faith, contend that the college had the obligation to hold open for him, over and above a teaching position as an

Associate Professor of Social Science, any position of a temporary nature.

Even if we assume, *arguendo*, that the exchange of letters between the appellant and Dr. Koch left the question of his status upon return in a state of ambiguity, we do not think that the facts, advanced by the appellant in his affidavit to the answer to the motion for a summary judgment, show him to be entitled to anything more than the position of an Associate Professor of Social Science. This was the rating which he held prior to his going on sabbatical. The appellant advances the contention in his affidavit that it was understood that he would return as an Associate Professor in Social Science, to teach political science, and he endeavors to narrow this understanding to this precise condition. However, in reading the affidavit accompanying the appellees' motion for summary judgment, the affidavit of the appellant accompanying his answer, and the supporting exhibits to both affidavits, a reasonable man cannot help but conclude that the letters exchanged between the parties, prior to the appellant's taking his sabbatical, express the understanding had by the parties. We think there is no dispute concerning this understanding and that there is nothing in these letters committing the college to return the appellant to any position other than that of his rated position prior to leaving, which was that of an Associate Professor in Social Science.

Since it is our view that there was no dispute as to the material facts in this case, the lower court was correct in denying the appellant's motion for summary judgment without a hearing. Furthermore, we find no abuse of its discretion in denying his motion for a new trial.

*Judgment affirmed, appellant
to pay costs.*